Common Pleas Court of Hamilton County.

LAURA E. MENKE, ET AL. V. GOLD MEDAL OIL CO., ET AL.

Decided December 8, 1932.

*John A. Scanlon*, for plaintiffs.

*Freiberg & Simmonds, Galvin & Tracy*, and *J. Paul Geoghegan*, for defendants.

MATTHEWS, J.

This is an action by certain stockholders of the Gold Medal Oil Company against that company and certain other of its stockholders. The petition alleges the amount

of stock owned by the respective stockholders of record in January, 1932, totalling 410 shares of an entire issue of 500 shares. It is also alleged that of the issued and outstanding stock at that time the plaintiffs owned 230 shares, constituting a majority; that the date fixed for the annual meeting of stockholders by the by-laws was the first Monday in January, and that this meeting in this year was improperly continued from time to time, without the plaintiff's consent and for the purpose of enabling the defendants to obtain control of the majority of the stock, and that to effectuate that purpose certain of the defendants between January 1932 and April 19, 1932, had issued to themselves the ninety unissued shares of the capital stock, and that on the last mentioned date a stockholders meeting was held and by the process of voting the ninety shares the defendants were enabled to control the election, and did in fact elect the board of directors at said meeting over the protest of the plaintiffs.

It is also alleged that the plaintiffs thereafter, on April 21, 1932, notified the corporation, its directors, officers and stockholders that said election was illegal, that the issue of said ninety shares of stock was illegal, and requested that a suit be brought to set aside and cancel the issue of said ninety shares, and that another meeting of duly qualified stockholders be held and a board of directors elected; that the defendants failed and refused to institute said suit or rescind their action in issuing said stock and in electing said board of directors, and that therefore this action is brought on behalf of all the stockholders. The prayer of the petition is that the issue of the ninety shares of the unissued stock be canceled and rescinded on the books of the company; that the defendants who had received certificates for the same be enjoined from transferring or otherwise disposing of them; that the election of directors on April 19, 1932, be declared illegal and void; that those defendants who were elected directors at said meeting be enjoined from acting as directors, and for other relief.

The amended answer and cross-petition of Michael Ryan, Aloysius B. Menke and Herbert P. Wagner, after admitting the issuance of the ninety shares of stock and

their purchase thereof January 1932, and that Joseph B. Menke died a resident of Hamilton county, and that plaintiff Laura E. Menke was the duly appointed and qualified acting executrix under his will, and also the sole beneficiary under said will, and that the total issue of capital stock of the Gold Medal Oil Company was five hundred shares, denied all other allegations of the petition.

By way of cross-petition they allege that Joseph B. Menke owned 183 shares of the stock at the time of his death, and that after his death the plaintiff Laura E. Menke, as executrix, on September 23, 1931, offered to sell to them the stock owned by Joseph B. Menke at the time of his death, in accordance with the conditions set out in the stock certificates, and that each of the defendants accepted her said offer in writing within the time limited by said offer; that the conditions set out in said stock certificates provided that when upon the death of any certificate holder his shares were offered to the remaining stockholders they should be offered in proportion to the number of shares of stock owned by each of the remaining stockholders. They also allege that after the acceptance of the offer by them the plaintiff, Laura E. Menke, attempted to withdraw her offer and has since refused to sell to them the shares they were entitled to respectively. The prayer of the cross-petition is for specific performance of the agreement.

At the trial a great deal of evidence was introduced from which it is perfectly clear that the affairs of this corporation were conducted very informally and during the lifetime of the original stockholders in reliance upon confidence and unanimous consent, rather than on compliance with the rules of law applicable in the absence of such unanimous consent.

While there was this disregard of the formalism incident to the conduct of the business of larger corporations, there is no suggestion that at any time the affairs of the corporation actually suffered, or that any dishonesty was practiced.

Undoubtedly, at the time of the death of Joseph B. Menke and thereafter the corporation was hampered by

a lack of available money with which to conduct its business, and that some of the defendant stockholders did furnish cash to supply the need and that the plaintiff, Laura E. Menke, did continue to draw the salary which was paid to Joseph B. Menke during his lifetime without apparently performing the services which the said Joseph B. Menke had performed, and that this was done by and with the consent of all the other stockholders. She did not assist the corporation in the time of its need by furnishing any portion of the cash with which it conducted its business during the period when its own funds were insufficient.

It was really this situation that brought about this litigation. The plaintiff Laura E. Menke, as executrix of Joseph B. Menke, and as the sole legatee under his will, desired to sell her stock. Some of the defendants who were actually engaged in the business were willing to buy her stock but were unable at the time to pay in cash the price which she demanded. The negotiations, therefore, were abandoned and the struggle for control precipitated. It was during the negotiations that the ninety shares of stock were issued, concerning which the plaintiffs complain. The justification for its issue offered by the defendants is that in 1929 all the directors and stockholders of the company waived their right of preemption and authorized the sale of the stock to any one who was willing to buy at par, and that this authorization had continued during the years and justified them in accepting the offer when they did the early part of this year. The minutes of the corporation contained no reference to this authorization, but undoubtedly there was some such plan authorized, as is evidenced by the fact that some stock was actually sold to non-stockholders at the time. There was justification for the sale of this stock in the early part of this year in order to raise capital and the sale of this stock did in fact improve the financial standing of the corporation to the extent of several thousand dollars, either by the payment of cash for the stock or by the crediting of the amount upon their indebtedness due to the purchasers of the stock from the corporation. Those legally in control of the corporation at the time authorized the

sale of this stock and the court is disposed to hold that it was validly issued.

The right of the defendants for specific performance depends altogether upon a proper construction of the right of preemption given to stockholders under the resolution passed by the stockholders on July 8, 1920, as follows:

"BE IT RESOLVED, that the following stipulation be placed upon each and every stock certificate issued by the Gold Medal Oil Company.

"It is agreed by the holder of the within shares of stock, and his heirs and assigns, that he will not dispose of any of the shares called for by this certificate without first offering the same, upon thirty days' notice, to the other stockholders of the company of the same class, to each that number of shares of those called for by this certificate which is proportional to the number of shares of the stock of the same class already held by said other stockholders, and that upon the death of the certificate-holder, the shares shall first be offered to the remaining stockholders, in proportion to the number of shares of common stock of the same class held by each, all on the basis of the book value of the share. In case there is any disagreement as to the book value, the matter is to be resolved by arbitration, each side of the controversy appointing one member, and the two so appointed, in case of disagreement, to select a third."

It is certain that all the stockholders recognize the existence and binding force of this stipulation, for the reason that upon the death of I. Meyerfeld his executor notified all the other stockholders that he offered to each of them the number of shares to which they were entitled, and Laura B. Menke, as executrix of Joseph B. Menke, likewise notified all the stockholders that she was willing to sell the stock of which Joseph B. Menke was the owner at the time of his death, and she stated that she did this "in accordance with the conditions set out in the issued stock certificates." She, however, made her offer cover the entire stock and fixed the price at the book value.

When the proper construction of this provision of the stock certificate was first presented to me upon the demurrer to the cross-petition, it seemed to me that to require a stockholder to sell a part of his stock to one of the other stockholders and have the rest of his stock re-

jected by the other stockholders was unfair and accordingly I stated that in my opinion "Laura E. Menke is not obliged to sell to one stockholder a proportionate amount of stock unless all the stockholders take their proportion."

The same question was re-argued on demurrer to the amended answer and cross-petition, and at that time as a result of the argument, I came to doubt the soundness of my original conclusion, and therefore overruled the demurrer.

There is very little help that can be gained from the books in a decision of this question. No legal limitation has occurred to the court and none has been suggested upon the right of stockholders to make any provision satisfactory to them upon this subject. The whole question, therefore, is what does the language mean which these stockholders used? Giving to the subject the best consideration of which I am capable, I have reached the conclusion that the language used can bear no other construction than that the stockholders intended to give to each survivor upon the death of any stockholder the right to purchase his proportionate share of the deceased stockholder's holding on the basis of the book value of the shares, and in case of disagreement as to the book value, such book value was to be determined by arbitration, as provided in the agreement. Such an agreement, upon reconsideration, does not seem harsh or unfair, because every stockholder under the operation of the rule would be, or might become, the beneficiary of it. Aleatory contracts are not uncommon and are legally unobjectionable.

This being a binding agreement, under which such of the defendants as availed themselves thereof had the right to purchase their proportionate share of the stock of Joseph B. Menke at the time when the stockholders' meeting should have been held in January, 1932, the plaintiffs are not entitled in equity to avail themselves of the legal title that was in Laura E. Menke, as executrix, for the purpose of controlling the election of the board of directors. For these reasons the court holds that the petition of the plaintiffs should be dismissed and that the prayer of the cross-petitions for specific performance should be granted.

A decree may be prepared accordingly.